Filed 11/23/22 P. v. Rodgers CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H047232 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1765036) |
| v. | **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** |
| LARRY LEE RODGERS, | |
| Defendant and Appellant. | **NO CHANGE IN JUDGMENT** |

Defendant Larry Lee Rodgers's petition for rehearing is denied as moot. There is no change in the judgment. The court orders that the opinion filed October 28, 2022, be modified as follows:

On page 17, the disposition shall be deleted and replaced with the following:

The judgment is reversed and the matter is remanded to the trial court. On remand, the trial court shall vacate the portion of its prior order denying the motion to suppress and enter a new order granting the motion to suppress evidence seized during the search of the vehicle and backpack. If Rodgers moves to vacate his pleas within 30 days after this opinion becomes final, the trial court shall vacate the pleas, reinstate the charges in the information as amended on August 13, 2018, and proceed to trial. If Rodgers does not move to vacate his pleas, the trial court shall reinstate the original judgment.

_____
Greenwood, P. J.

_____ _____
Grover, J. Lie, J.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LARRY LEE RODGERS,<br><br>Defendant and Appellant. | H047232<br>(Santa Clara County<br>Super. Ct. No. C1765036) |

Defendant Larry Lee Rodgers pleaded no contest to kidnapping, assault with a deadly weapon, criminal threats, and vehicle theft. The trial court imposed a total term of nine years in state prison.

Rodgers appeals from the trial court's denial of his motion to suppress the fruits of a warrantless vehicle search. In the course of attempting to locate Rodgers, who had been detained by private bail bond agents three hours earlier, the police—unaware that Rodgers had been detained—stopped an SUV driven by another person, detained the driver, and determined Rodgers was not in the SUV. The police then searched the vehicle and found a backpack containing a firearm and drugs. The Attorney General contends the search was reasonable because Rodgers had no reasonable expectation of privacy in the vehicle or its contents, and the officers relied in good faith on precedent in effect at the time of the search. (See *In re Arturo D.* (2002) 27 Cal.4th 60 (*Arturo D.*), overruled by *People v. Lopez* (2019) 8 Cal.5th 353 (*Lopez*).)

For the reasons below, we conclude the trial court erred in denying the motion to suppress. We will reverse the order denying the motion, vacate the judgment, and remand for the trial court to grant the motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural Background

The prosecution charged Rodgers with six counts: count 1—kidnapping (Pen. Code, § 207, subd. (a))[1]; counts 2 and 3—assault with a firearm (§ 245, subd. (a)(2)); counts 4 and 5—criminal threats (§ 422); and count 6—theft or unauthorized use of a vehicle (Veh. Code, § 10851, subd. (a)). The prosecution alleged firearm enhancements on all counts. (§§ 12022, subd. (a)(1), 12022.5, subd. (a), 12022.53, subd. (b).) The prosecution further alleged Rodgers had suffered a prior prison term conviction (§ 667.5, subd. (b)) and that he committed the offenses while released on bail in another case (§ 12022.1).

Rodgers moved to suppress evidence the police seized during warrantless searches of a vehicle and a hotel room. The trial court denied the motion as to the search of the vehicle but granted it as to the hotel room.

Rodgers pleaded no contest to all counts as charged and admitted the allegations. In March 2019, the trial court imposed an aggregate term of nine years in prison, consisting of eight years for count 1 and a consecutive one-year term for count 2. The court imposed concurrent terms for counts 3 through 6. The court struck the firearm enhancements as well as enhancements for the prior prison term and the allegation Rodgers was out on bail at the time of the offenses.

---

[1] Subsequent undesignated statutory references are to the Penal Code.

### B. *Facts of the Offenses*

According to evidence presented at the preliminary hearing, Rodgers had been dating C.T. for several years. The couple fought often, and Rodgers choked C.T. on multiple occasions.

After midnight one morning, Rodgers called C.T. at home. He was upset and yelling, and he asked her about a bag. She found the bag and agreed to drive somewhere to meet him with it. When they met, he pulled out a gun, held it to her head, threatened to kill her, and told her to drive. After driving for a while, they stopped at a 7-Eleven, and Rodgers followed C.T. into the store while C.T. believed Rodgers still had the gun pointed at her.

After the couple returned to the car, C.T. managed to get away and went back into the 7-Eleven, where she asked the clerk to call 911. Rodgers re-entered the 7-Eleven to try to force C.T. to leave, but the clerk intervened. Rodgers then drove away in C.T.'s car.[2]

As set forth in more detail below, Rodgers was located and taken into custody by private bail bond agents two days later. Three hours after Rodgers was detained, the police found a gun and drugs in a backpack during the search of a Porsche Cayenne SUV he had been driving when the agents detained him.

## II. DISCUSSION

Rodgers contends the trial court erred in denying his motion to suppress the evidence found when the police conducted a warrantless search of a vehicle and backpack. He argues the police lacked probable cause for the search, and that the prosecution failed to establish any other valid exception to the Fourth Amendment's warrant requirement. The Attorney General contends the search was permissible because Rodgers lacked any reasonable expectation of privacy in the vehicle and backpack. The

---

[2] Neither the victim nor her car were involved in the search at issue here.

Attorney General further argues the police acted in good faith according to the law in effect at the time of the search.  (See *Arturo D.*, *supra*, 27 Cal.4th 60.)

### A. *Facts of the Search*

The search took place two days after the kidnapping incident.  Earlier in the day, around 3:00 p.m., several private agents for a bail bond company saw Rodgers driving a Porsche Cayenne SUV with a female passenger.[3]  The agents stopped Rodgers, forcibly detained him, and took him to jail.  The woman was not arrested and was left behind with the SUV.  The police involved in the subsequent SUV and hotel search were unaware the bail agents had detained Rodgers.

Around 6:04 p.m., San Jose Police Officer Barry Torres approached a silver Porsche Cayenne with paper license plates parked in a hotel parking lot.  Officer Torres had received a "be on the lookout" notice for Rodgers with a photograph of him and information that Rodgers had felony warrants and felony affidavits on file.  Officer Torres had been told Rodgers was driving a silver Porsche Cayenne with paper plates and that he was possibly carrying a gun.  Officer Torres saw a female sitting in the driver's seat of the Porsche.  He immediately parked nearby and called for other units to respond to the location.  After the first responding officer arrived, Officer Torres saw a man resembling the photograph of Rodgers come out of a room at the hotel, whereupon the two officers approached the hotel to detain the man.  The police later determined the man was not Rodgers.

Officer Matthew Croucher was another one of the officers who responded to the call for assistance.  When he arrived, Officer Torres directed him to secure the SUV but Officer Torres did not ask him to search it.  Officer Croucher parked and walked up to the driver, whom he considered to be a "potential threat" to the police.  The windows of the SUV were slightly tinted, but Officer Croucher could see that the driver was a woman.

---

[3] The stolen vehicle charge in count 6 involved a different vehicle, not the Porsche Cayenne.

He could not see what was in the back seat of the SUV. He saw that it had paper license plates, but he did not see any registration on them. The SUV moved forward several feet, and he instructed the driver to put the SUV in park and turn it off. After backing up several feet, the driver complied, and he ordered her at gunpoint to get out of the SUV, whereupon she got out and she was placed in handcuffs. At that point, the door was open and Officer Croucher could see there was nobody else in the front part of the SUV, but he could not tell if there was anyone else inside other parts of it.

Before searching the SUV, Officer Croucher gleaned the vehicle identification number from the lower windshield, checked it against DMV records, and determined who the registered owner was. The driver had not provided him with that information, but she did tell him the car did not belong to her. She said she had been instructed by someone she knew to go to the hotel and pick up the SUV. Officer Croucher never asked her for her driver's license. She did have a valid driver's license, however, and she was not on probation or wanted on any warrants.

Once the driver was placed in the patrol vehicle, Officer Croucher proceeded to conduct a search of the Porsche. He entered the SUV and immediately saw there was nobody else inside. He first searched the driver's compartment and the area that would be within arm's reach of the driver, including the center console. He then searched a woman's bag on the front passenger's seat and set it on the hood of the car. He did not find anything "significant" in the front part of the SUV.

Officer Croucher then began searching the rear portion of the SUV. Directly behind the back portion of the center console, he found a black backpack. The top portion of the main section of the backpack was unzipped and open. He pulled the backpack out, set it down on the driver's seat, and looked down inside it. Officer Croucher saw a glass methamphetamine pipe with a circular bulb protruding from the backpack. He then moved the pipe and saw the handle grip of what appeared to be a

5

firearm, whereupon he opened the unzipped part of the backpack and confirmed that it contained a firearm. He then took the entire backpack with the firearm out of the SUV.

In a subsequent search of the backpack, police found a wallet with Rodgers's credit card, a photograph of him with a small child, suspected cocaine base, and a digital scale, among other things. In a subsequent search of the SUV's glovebox, police found a registration for the Porsche in someone else's name, and a registration for a BMW in Rodgers's name.

The police determined Rodgers had been renting a room at the hotel and they performed a search of the room, wherein they found several replica firearms and an illegally extended gun magazine.

### B. *Legal Principles*

"The Fourth Amendment to the United States Constitution prohibits 'unreasonable searches and seizures.' In general, a law enforcement officer is required to obtain a warrant before conducting a search. [Citation.] Warrantless searches 'are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' [Citations.]" (*Lopez, supra,* 8 Cal.5th at p. 359.)

One exception to the warrant requirement is for a vehicle search based on probable cause the vehicle contains evidence of a crime. (*Carroll v. U.S.* (1925) 267 U.S. 132.) Another exception exists for the search of a person incident to a lawful arrest. (*U.S. v. Robinson* (1973) 414 U.S. 218, 220.) But when the occupant of a vehicle is arrested, a search of the vehicle under the incident-to-arrest exception must be limited to the arrestee's person and the area within their immediate control—i.e., the area from which the arrestee could reach a weapon. (*Chimel v. California* (1969) 395 U.S. 752, 763.) Police may also search the vehicle incident to the arrest of an occupant if it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." (*Arizona v. Gant* (2009) 556 U.S. 332, 343 (*Gant*).) However, once the police remove

6

and secure the occupant at a safe distance from the vehicle, they may not perform a vehicle search under the incident-to-arrest exception absent a reasonable basis to believe the vehicle contains evidence relevant to the crime of arrest. (*Id.* at pp. 343-344.)

In the absence of a warrant, the prosecution bears the burden of showing the search was reasonable. (*People v. Williams* (1999) 20 Cal.4th 119, 130.) On appellate review, "We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]" (*People v. Glaser* (1995) 11 Cal.4th 354, 362 (*Glaser*).) "Although our review of factual determinations is deferential, it is not without limit. Factual determinations must be supported by substantial evidence." (*People v. Morton* (2003) 114 Cal.App.4th 1039, 1048.) To satisfy the substantial evidence standard, the evidence supporting the trial court's findings must be "reasonable, credible, and of solid value." (*People v. Elder* (2017) 11 Cal.App.5th 123, 130 (*Elder*).)

### C. Trial Court Findings and Rulings

Rodgers moved pretrial to suppress the evidence found in the searches of the SUV, the backpack, and the hotel room. As to the SUV, his motion relied on the same grounds raised here. The prosecution opposed the motion on the grounds that the search was lawful under *Arturo D.*, *supra*. The prosecution further argued that Rodgers no longer had any expectation of privacy in the SUV once the bail bond agents had removed him from it because he did not assert a property interest in it, and he no longer had dominion or control over the vehicle.

At a hearing on the matter, the prosecution presented the testimony of Officers Torres and Croucher, who testified to the facts of the search as set forth above. The defense introduced the testimony of one of the bail bond agents who had detained Rodgers several hours before the vehicle search.

The trial court granted the motion to suppress with respect to the evidence found in the hotel room but denied the motion as to the SUV and backpack. The court made several factual findings in the course of its ruling. As an initial matter, the court ruled that Rodgers had shown he had a reasonable expectation of privacy in the SUV and the backpack at the time of the search. First, the court found there was no indication or evidence the SUV had been stolen, but that according to police, the SUV was "associated with" Rodgers. Second, the court found that Rodgers was driving and had control of the SUV with another party in the vehicle at the time he was detained. Third, the court further found the SUV had within it property identified with Rodgers—in particular, the wallet with a credit card and a photograph. Fourth, the court found Rodgers left the SUV "with apparently someone he trusted and ultimately who was able to remove that property to another location." The court rejected the prosecution's argument that Rodgers had no expectation of privacy because he had abandoned the vehicle and failed to express any property interest in it when he was detained by private bail bond agents.

The court then ruled that the police nonetheless acted reasonably based on the information they had been provided. The court found the police were aware of several outstanding warrants for Rodgers; that they were unaware of his whereabouts; and that the SUV was "associated with" him. The court ruled that the police had "every appropriate authority" to detain the driver and gather information with respect to the occupancy of the SUV as well as the ownership and identification of the persons involved. Accordingly, the court ruled it was reasonable for the police to search the area of the SUV to which the driver had access, including the backpack. The court found that the backpack was open, and that upon seeing the methamphetamine pipe, the police looked further into the backpack and saw the butt of a firearm, at which time the officer took the backpack out of the vehicle and placed it in his patrol car for proper control.

8

The court then cited Vehicle Code section 2805[4] for the proposition that the police had the right to establish the rightful ownership or possession of a vehicle if the driver is properly detained, but the court stated that this code section was not dispositive of its ruling. The court then ruled that the search of the hotel room was unreasonable in violation of Rodgers's Fourth Amendment rights. Accordingly, the court granted the motion to suppress the fruits of the hotel room search but denied the motion as to the SUV and backpack.[5]

Rodgers subsequently filed a motion for reconsideration on the ground that Vehicle Code section 2805 did not justify the search. Rodgers conceded the police had reasonable suspicion to stop the SUV and to conduct a plain-view search of the interior to determine whether Rodgers was inside. Rodgers distinguished *Arturo D.* on the ground that the officer's intent in searching the vehicle was not to establish its ownership or registration as allowed under the limited exception set forth in *Arturo D.* The trial court denied the motion to reconsider based on the same grounds previously set forth at the hearing on the motion to suppress.

### D. The Search of the Vehicle and Backpack Violated the Fourth Amendment

Rodgers concedes the police had reasonable suspicion for the initial detention and that the police were justified in viewing the interior of the SUV to see whether anyone else was inside. He argues that the police lacked any valid basis to search the SUV after they determined nobody was inside it. The Attorney General does not claim the police had probable cause for the search. Rather, the Attorney General argues first that Rodgers

---

[4] That section provides in part: "For the purpose of locating stolen vehicles, . . . a member of a city police department . . . whose primary responsibility is to conduct vehicle theft investigations, may inspect any vehicle of a type required to be registered under this code . . . in order to establish the rightful ownership or possession of the vehicle or identifiable vehicle component." (Veh. Code, § 2805, subd. (a).)

[5] The search of the hotel room is not at issue in this appeal.

9

failed to meet his burden of showing he had a reasonable expectation of privacy in the SUV or the backpack.

### 1. Rodgers Established an Expectation of Privacy in the SUV and Backpack

The Attorney General contends Rodgers failed to introduce any evidence he had permission to drive the SUV, which was not registered in his name, and failed to show any evidence of who owned the backpack. The Attorney General further argues the trial court improperly shifted the burden to the prosecution to disprove Rodgers's expectation of privacy. The Attorney General points out that the search took place three hours after Rodgers had been driving the car, and that even assuming he had possession of it at the time he was detained, he failed to establish he had some ongoing permission or authority to possess the SUV.

"Defendant bears the burden of showing a legitimate expectation of privacy. [Citation.] Among the factors to be considered are ' " 'whether the defendant has a [property or] possessory interest in the thing seized or the place searched; whether he has the right to exclude others from that place; whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises.' " ' [Citation.]" (*People v. Roybal* (1998) 19 Cal.4th 481, 507.) "A person . . . who has the owner's permission to use a vehicle and is exercising control over it has a legitimate expectation of privacy in it." (*People v. Leonard* (1987) 197 Cal.App.3d 235, 239.)

As set forth above, the trial court made several factual findings in support of its ruling that Rodgers had established an expectation of privacy in the SUV and backpack. The court's findings are supported by substantial evidence. There was no evidence (and the prosecution did not assert) the SUV was stolen, but a bail bond agent testified Rodgers was driving the SUV with a passenger when he was detained three hours before the search. The kidnapping victim also testified that Rodgers was driving the SUV two

days before the day of the search, and that he had been driving the vehicle for "[m]aybe a few months." There was no evidence Rodgers was driving without the owner's permission, even though the vehicle—a Porsche Cayenne SUV—had substantial monetary value. Furthermore, there was evidence in the SUV and backpack—e.g., Rodgers's wallet, credit cards, and a photograph—that implied he had dominion and control over the backpack and hence the contents of the SUV. Finally, the trial court found Rodgers had left the SUV with someone he trusted to take it to another location— e.g., to the hotel where he had rented a room. Rodgers' possession and use of the vehicle over several months, and the backpack containing his personal identification and effects within the car's interior were sufficient to establish that Rodgers had a legitimate possessory interest in the SUV and the ability to control access to it, such that he had exhibited a reasonable expectation of privacy in the vehicle and its contents.

The fact that Rodgers had failed to show he was the registered owner of the SUV is not by itself enough to overcome the evidence supporting his asserted expectation of privacy. It has long been the rule that a person need not show legal ownership or a legal property interest in the place to be searched in order to establish a reasonable expectation of privacy in it. (*Byrd v. U.S.* (2018) __ U.S. __ [138 S.Ct. 1518, 1527] [driver of rental car had an expectation of privacy in it even though he was not listed as an authorized driver on the rental agreement].) In that case, Byrd was driving a rental car that had been rented by someone else when Byrd was stopped by the police, whereupon a search of the car revealed it contained heroin. (*Id.* at pp. 1524-1525.) The prosecution argued Byrd had no reasonable expectation of privacy in the car because the rental agreement did not list him as an authorized driver of the car. The high court rejected this position, holding that while property interests may be "instructive" in determining privacy interests, "it is by now well established that a person need not always have a recognized common-law property interest in the place searched to be able to claim a reasonable expectation of privacy in it." (*Id.* at p. 1527.) The Court held that while there is no single metric or

11

exhaustive list of considerations in determining whether one has an expectation of privacy, a person who has lawful possession or control over the property will usually have a legitimate expectation of privacy by virtue of the right to exclude others from the property. (*Ibid.*)

We conclude the record is sufficient to show Rodgers established an expectation of privacy in the SUV by virtue of his possession and control over it and its contents for an extended period of time. This conclusion is supported by the trial court's finding that Rodgers exercised dominion and control over the SUV as exemplified by his apparent ability to instruct someone else to drive the vehicle to the hotel where he was staying. The trial court's finding that Rodgers stored his backpack with his wallet, credit cards, and photographs in the car further supports this conclusion. While dominion and control by itself does not necessarily establish an expectation of privacy—because a person who has stolen property may have control over it, (*Byrd, supra,* __ U.S. __ [138 S.Ct. at p. 1529])—here there was no indication the SUV at issue was stolen or taken without authorization. (See *United States v. Cohen* (11th Cir. 2022) 38 F.4th 1364, 1369 [defendant who was not listed as authorized driver on rental car agreement had reasonable expectation of privacy where he had sole possession of the car as he could have excluded third parties such as carjackers; there was no indication defendant otherwise lacked lawful possession of the vehicle; car was rented by mother of defendant's girlfriend, who gave him permission to drive it].) The circumstances of Rodgers's access and control over a Porsche Cayenne for several months supports the trial court's implied findings that he was authorized to drive it and that his personal items in the backpack established his privacy interest in it.

The Attorney General cites Justice Werdegar's concurring opinion from *People v. Letner & Tobin* (2010) 50 Cal.4th 99, for the proposition that the defendant must show he or she had the owner's permission to use the vehicle. (*Id.* at p. 214 [conc. opn. Of Werdegar, J.]) That case preceded *Byrd*, however, and a concurring opinion does not

12

constitute binding authority. (*People v. Franz* (2001) 88 Cal.App.4th 1426, 1442.) The Attorney General also relies on *People v. McPeters* (1992) 2 Cal.4th 1148 (superseded by statute on other grounds). In that case, defendant was a guest in someone's home and asked a cousin to store a gun in the cousin's bedroom. The court found the defendant had no expectation of privacy in part because the defendant had no legitimate right of access to the bedroom or the ability to excluded anyone from it. (*Id.* at p. 1172.) That case is inapposite here, where Rodgers's extended period of control over a Porsche Cayenne SUV supports a finding that he had legitimate control and dominion over it. The Attorney General cites *Rawlings v. Kentucky* (1980) 448 U.S. 98 (*Rawlings*), in which the defendant had dumped a large quantity of drugs in a woman's purse after he had known the woman for only a few days. The court held the defendant had no expectation of privacy in the purse because he had admitted he had no subjective expectation of privacy in it, and the owner of the purse testified the defendant had not previously sought or received permission to access the purse. (*Id.* at p. 105.) The facts here are distinguishable in that Rodgers had control and dominion over the vehicle for an extended time, supporting an inference that he was permitted to use it.

The Attorney General further argues that the search occurred three hours after Rodgers had been detained, such that he no longer had control over or access to the vehicle and the backpack. But the trial court correctly rejected this argument, finding that Rodgers had not voluntarily abandoned his privacy interests in the vehicle and backpack. The court rejected the prosecution's assertion that Rodgers was required to affirmatively assert his privacy interest in the vehicle at the time he was forcibly detained, noting that this could constitute a "dangerous precedent."

We acknowledge the evidence supporting Rodgers's expectation of privacy in the SUV was not overwhelming. The Attorney General notes there was no affirmative evidence the legal owner of the SUV gave Rodgers express permission to drive it. But permission need not be express; it may be inferred from the circumstances. (See *Byrd*,

13

*supra,* __ U.S. __ [138 S.Ct. at p. 1524] [defendant had expectation of privacy where renter of the car gave the keys to defendant].) We think it is a reasonable inference that he drove with the owner's consent given that Rodgers had control over a Porsche Cayenne for months with no report of it being stolen. But even assuming Rodgers lacked any expectation of privacy in the SUV, the record establishes he had a reasonable expectation of privacy in the backpack. The backpack, which the police found in the rear portion of the SUV, contained Rodgers's wallet, credit cards, and a photo of him with a child. The fact that Rodgers kept those items in the backpack and stored it in the rear portion of a vehicle he controlled shows he had an actual subjective expectation it would remain private. Here, it is apparent Rodgers involuntarily left the backpack in the SUV when the bail bond agents forcibly extracted him, such that he did not abandon it volitionally. The trial court's finding on this point was supported by the record.

Rodgers was not required to prove ownership of the backpack, as the Attorney General asserts. Nor is it clear how one would prove legal ownership of a backpack apart from the fact that it was under his control and contained his personal items. Courts have long extended an expectation of privacy to such bags, purses, luggage, and other repositories for personal effects under one's control. (*Safford Unified School Dist. No. 1 v. Redding* (2009) 557 U.S. 364, 374, fn. 3 [student had a reasonable expectation of privacy in her backpack]; *Bond v. U.S.* (2000) 529 U.S. 334, 336 [personal luggage is an "effect" protected by the Fourth Amendment]; *Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1229 [expectations of privacy in personal luggage]; *People v. Fick* (1980) 107 Cal.App.3d 892, 895 [luggage and briefcases are common repositories for one's personal effects and are inevitably associated with the expectation of privacy].)

This case is distinguishable from *Rawlings*, in which the defendant "dumped thousands of dollars of illegal drugs" into a woman's purse. (*Rawlings, supra*, 448 U.S. at p. 105.) In that case, the woman testified that the purse belonged to her and the defendant never requested access to it. Here, Rodgers's personal effects were in the

backpack, demonstrating that he had access and had exercised dominion over it. He was prevented from continuing to exercise that control only because he was involuntarily detained by the bail agents.

The Attorney General argues Rodgers could not have had a legitimate expectation of privacy because the backpack was open and there was a methamphetamine pipe protruding from it. But Officer Croucher testified that before he saw a methamphetamine pipe, he moved it from the back portion of the SUV, set it down on the driver's seat, and looked down inside the backpack. As the Attorney General conceded at oral argument, the officer's movement and manipulation of the backpack constituted a search. (*Arizona v. Hicks* (1987) 480 U.S. 321, 324-325 [officer's movement of stereo equipment constituted a search].) Nothing in the record supports a finding that the pipe was in plain view prior to the search, including the fact that the officer had to reach into the rear of the SUV and extract the backpack from behind the center console before looking inside it. (See, e.g., *People v. Conley* (1971) 21 Cal.App.3d 894, 901 [officer violated defendant's reasonable expectation of privacy when officer reached into hidden area of bumper to extract bag of LSD tablets].)

For the reasons above, we conclude Rodgers had a reasonable expectation of privacy.

### 2. *The Police Did Not Search the SUV and Backpack Under Any Valid Exception to the Fourth Amendment's Warrant Requirement*

The Attorney General does not argue that the search of the SUV was justified by probable cause. The Attorney General argues probable cause supported the stop of the vehicle and the detention of the driver, but the prosecution made no attempt in the trial court to establish probable cause for the search itself. Nor does the record objectively establish any such probable cause. The Attorney General contends instead that the officers had a good faith basis to search the SUV under *Arturo D.*, *supra*, 27 Cal.4th 60. In 2019, the California Supreme Court overruled *Arturo D.* in *Lopez*, *supra*, 8 Cal.5th

15

353. The search in this case took place in 2017, however, such that the exclusionary rule would not apply if police reasonably acted in compliance with then-existing precedent. (*Davis v. U.S.* (2011) 564 U.S. 229, 232.)

In *Arturo D.*, the California Supreme Court set forth a limited exception for warrantless vehicle searches where the police officer is searching for documents required to show registration and identification in response to a driver's refusal to provide them. "Limited warrantless searches for required registration and identification documentation are permissible when, following the failure of a traffic offender to provide such documentation to the citing officer upon demand, the officer conducts a search for those documents in an area where such documents reasonably may be expected to be found. Under this standard, an officer may not search for such documents on pretext [citation], or without first demanding that they be produced [citation], and an officer may not search in containers or locations in which such documents are not reasonably expected to be found. [Citations.]" (*Arturo D., supra*, 27 Cal.4th at p. 86.)

That exception did not justify the stop here. The exception defined in *Arturo D.* only applied when a driver failed to provide documentation "upon demand." (*Arturo D., supra*, 27 Cal.4th at p. 86.) There was no evidence Officer Croucher asked the driver for the vehicle's registration, and he admitted he never asked the driver for her driver's license. Nor could Officer Croucher claim the search was intended to locate the registration because he testified that he got the SUV's registration information from a DMV search of the vehicle identification number *before* he began the vehicle search. The Attorney General argues that somebody must have asked the driver for her identification because Officer Croucher testified that he heard the information transmitted over the police dispatch radio. But the trial court sustained an objection to that testimony, and in any event, the record does not establish that the driver refused to comply with an officer request to provide identification or that this occurred prior to the search. Furthermore, Officer Torres testified that the driver did in fact have a valid

16

driver's license. It is equally likely that police were simply checking her license against the information relayed by a dispatcher.

Because the exception in *Arturo D.* was recognized to accommodate the government's "regulatory needs," *Arturo D.*, *supra*, 27 Cal.4th at page 68, the officer's purpose for the search was held to be relevant to establishing the exception, and pretextual searches were disallowed. (Contrast with *Whren v. United States* (1996) 517 U.S. 806 [officer's subjective intentions are irrelevant to the lawfulness of the search].) As the Attorney General admits, the police here stopped the SUV because they were searching for Rodgers, who had been "associated with" that vehicle. It was far afield from the stops addressed in *Arturo D.*, which consisted solely of stops for routine Vehicle Code infractions. (*Arturo D., supra*, 27 Cal.4th at pp. 64-66.) Nor could the police justify the search as incident to the arrest of the driver. While the search was arguably limited to that within the reach of the driver at the point when the backpack was discovered, the driver had already been handcuffed and placed in a patrol car, and Officer Croucher had already determined nobody else was inside the SUV. At that point, the exception for a search incident to arrest no longer justified the seizure and search of the backpack. (*Gant, supra*, 556 U.S. at pp. 343-344.)

For the reasons above, the prosecution failed to establish a valid exception to the Fourth Amendment's warrant requirement. The Attorney General does not put forth any other exceptions, and he does not argue the error was harmless. In any event, we would find the error, as a violation of federal constitutional rights, was not harmless beyond a reasonable doubt. (See *Chapman v. California* (1967) 386 U.S. 18, 24.) Accordingly, we will reverse the denial of the motion to suppress, vacate the judgment of conviction, and remand with instructions to grant the motion.

### III.    DISPOSITION

The portion of the trial court's order denying Rodgers's motion to suppress evidence seized during the search of the vehicle and backpack is reversed, and the

17

judgment is vacated. On remand, the trial court shall enter a new order granting the motion to suppress evidence seized during the search of the vehicle and backpack.

_____
Greenwood, P. J.

WE CONCUR:


_____
 Grover, J.


_____
 Lie, J.


H047232
People v. Rodgers